UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

TIFFANY LATRES' STAMPER                     CIVIL ACTION NO.

VERSUS                                       21-460-BAJ-EWD

COMMISSIONER OF SOCIAL SECURITY

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on March 2, 2023.

                                                    **ERIN WILDER-DOOMES**
                                                    **UNITED STATES MAGISTRATE JUDGE**

Cert. Mail 7020 0640 0001 4750 6583

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

**TIFFANY LATRES´ STAMPER**                                    **CIVIL ACTION NO.**

**VERSUS**                                                     **21-460-BAJ-EWD**

**COMMISSIONER OF SOCIAL SECURITY**

### MAGISTRATE JUDGE'S REPORT, RECOMMENDATION, AND ORDER

Tiffany L. Stamper ("Plaintiff"), who is representing herself, brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI").[1] Plaintiff has filed a Memorandum in Support of Appeal[2] and the Commissioner has filed an Opposition Memorandum.[3]

Based on the applicable standard of review under 42 U.S.C. § 405(g), substantial evidence supports the Commissioner's decision, and the administrative law judge applied the correct legal standards. Accordingly, it is recommended that the Commissioner's decision be **AFFIRMED**.

**I.   PROCEDURAL HISTORY**

Plaintiff fractured her femur at the hip in a motor vehicle accident on or about January 19, 2016.[4] On April 24, 2018, Plaintiff filed an application for SSI and DIB alleging disability beginning on January 1, 2018, two years post-accident.[5] At the time of the ALJ's October 11, 2019 decision, it was determined that the date that Plaintiff will last meet the insured status requirements

---

[1] *See* R. Docs. 2-3, order granting Plaintiff's motion to proceed *in forma pauperis*. *See also* AR pp. 172-84 (applications for DIB and SSI). References to documents filed in this case are designated by "R. Doc. [docket entry number(s)] p. [page number(s)]." References to the record of administrative proceedings filed in this case are designated by "AR p. [page number(s)]."
[2] R. Doc. 15.
[3] R. Doc. 17.
[4] AR pp. 317, 351. Plaintiff's January 19, 2016 Our Lady of the Lake Regional Medical Center ("OLOL") medical record states that Plaintiff hit a guard rail on the interstate while driving intoxicated. Plaintiff was originally brought to Lane Memorial Hospital and was then transferred to OLOL for surgery. *Id*., at AR p. 317.
[5] *See* AR p. 17 (October 11, 2019 decision of Administrative Law Judge David J. Shea ("ALJ") stating that Plaintiff's applications were filed on April 24, 2018), AR pp. 80, 93 (disability determination explanations noting April 24, 2018 filing date), and AR pp. 76, 78 (disability determinations and transmittals noting April 24, 2018 filing date). Plaintiff was 29 years old at the time of the applications and had completed eleventh grade. AR pp. 41, 211.

of the Social Security Act is September 30, 2023.[6]  Both claims were initially denied on August 21, 2018.[7]  Thereafter, Plaintiff timely requested a hearing before an ALJ.[8]  A hearing was held on July 25, 2019, at which Plaintiff, who was represented by counsel, testified.[9]  Vocational Expert ("VE") John M. Yent ("Yent") also testified.[10]  The ALJ left the record open for Plaintiff to submit additional evidence as it related to a future appointment with LSU Health Surgical Clinic regarding her hip.[11]  On October 11, 2019, the ALJ issued a notice of unfavorable decision.[12]  Plaintiff timely requested review by the Appeals Council.[13]  Plaintiff represented herself during the appeal.[14]  On April 16, 2020, the Appeals Council denied Plaintiff's request for review.[15]

On August 5, 2021, Plaintiff filed her Complaint in this Court, having received a lengthy extension of time to do so from the Appeals Council due to the COVID-19 pandemic.[16]  Accordingly, Plaintiff exhausted her administrative remedies before timely filing this action for judicial review, and the Appeals Council's decision is the Commissioner's final decision for

---

[6] AR p. 20. *See also* AR pp. 185, 197 (Plaintiff's certified earnings records run on March 19, 2019 and July 15, 2019 noting the date last insured ("DLI") of "9/23."  At the time of the applications, however, the DLI was noted as September 2022. *See* AR p. 199 (May 1, 2018 disability report). The date last insured is not at issue in this appeal, and the later, more favorable date was applied by the ALJ.
[7] AR pp. 106-13.  And *see* August 20, 2018 disability determination and transmittals (AR pp. 76, 78) and August 20, 2018 disability determination explanations finding no disability.  AR pp. 80-105.
[8] AR p. 116 (September 18, 2018 request for hearing) and AR pp. 117-19 (October 5, 2018 letter to Plaintiff confirming receipt of her request for hearing).
[9] AR pp. 114-15 (fee agreement and appointment of representative Kimona Hogan); AR pp 139-40 (notice of hearing); AR pp. 33-75 (transcript of hearing).  *See also* Plaintiff's pre-hearing brief (Plaintiff's counsel contended that she submitted it prior to the hearing but the ALJ had not received it. AR pp. 36-37.  It is not in the administrative record but is attached to Plaintiff's Complaint at R. Doc. 1-1, pp. 1-4) and Plaintiff's August 6, 2019 post-hearing brief.  AR p. 291.
[10] AR p. 288 (resume).
[11] AR pp. 73-74. In August 2019, the ALJ notified Plaintiff that he received additional medical records from LSU Health Surgical Clinic, which were made part of the record, and advised Plaintiff of actions she could take in light thereof. AR p. 291.
[12] AR pp. 14-32.
[13] AR p. 171 (November 8, 2021 request for an appeal to the Appeals Council and request for an extension of time to submit evidence and/or argument, which was granted at AR p. 9).
[14] Plaintiff's counsel withdrew from representation during the pendency of the appeal. AR p. 8. However, Plaintiff submitted a brief to the Appeals Council, which was made part of the record. AR pp. 6-7, 294-98.
[15] AR pp. 3-7.
[16] R. Doc. 1 and *see* AR p. 1 (Appeals Council's letter granting extension through the date of the filing the Complaint), R. Doc. 1-2, p. 3 (Appeal Council letter granting extension due to COVID-19 pandemic) and R. Doc. 1-3, p. 1 (correspondence from Plaintiff regarding closure of the courthouse).

purposes of judicial review.[17]

## II. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to two inquiries: (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applies the proper legal standards.[18] If the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal.[19]

## III. PLAINTIFF'S ASSIGNMENTS OF ERROR

Construing Plaintiff's Memorandum liberally because she is representing herself, she argues the following five assignments of error: (1) the ALJ applied the wrong disability onset date; (2) the ALJ erred in his determination of Plaintiff's severe impairments at step 2; (3) the ALJ erred in his determination that Plaintiff does not meet the criteria of Listing 1.02; (4) the ALJ erred in his determination of Plaintiff's RFC; and (5) the ALJ erred in his determination that Plaintiff could perform her past relevant work at step 4.

## IV. LAW AND ANALYSIS

If substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed.[20] Substantial evidence is that which is relevant and sufficient for a reasonable mind

---

[17] *See* 20 C.F.R. § 404.981 ("The Appeals Council may deny a party's request for review or it may decide to review a case and make a decision. The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you or another party file an action in Federal district court, or the decision is revised. You may file an action in a Federal district court within 60 days after the date you receive notice of the Appeals Council's action.").
[18] *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).
[19] *Bruno, M v. U.S. Commissioner, Social Security Administration,* No. 19-00886, 2020 WL 5269741, at *3 (W.D. La. Aug. 6, 2020), *report and recommendation adopted sub nom., Bruno v. Commissioner, Social Security Administration*, No. 19-00886, 2020 WL 5261150 (W.D. La. Sept. 3, 2020), citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987) and *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981).
[20] *Richardson v. Perales*, 402 U.S. 389-90, 401 (1971); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (superseded by statute on other grounds, *see Stancle v. Colvin*, No. 4:15-00405-CAN, 2016 WL 3172784, at *8, n. 11 (E.D. Tex. June 7, 2016)).

to accept as adequate to support a conclusion. It is more than a mere scintilla and less than a preponderance.[21] A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.[22] Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side.[23] In applying the substantial evidence standard, the court must review the entire record as whole, but may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision.[24]

Here, the ALJ applied the correct legal standards and substantial evidence supports his findings.

### A. Substantial Evidence Supports the Application of January 1, 2018 as Plaintiff's Disability Onset Date

Plaintiff reported January 1, 2018 as her disability onset date, which the ALJ adopted.[25] Plaintiff now argues: "The onset date to my findings is Incorrect which it states January 1, 2018 which is actual the 16th day of January 2018, to which my previous attorney argued at the hearing that it be changed from the date of my application to the actual date of injury."[26] It is not clear if Plaintiff is seeking to change the onset date to January 16, 2018, or to change it to the date of the accident, approximately January 19, 2016, or to change it to the date she last worked, as argued by

---

[21] *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).
[22] *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001), quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000).
[23] *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).
[24] *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).
[25] AR p. 20. The ALJ found that, although Plaintiff worked after January 1, 2018, Plaintiff's 2018 earnings did not rise to the level of substantial gainful activity ("SGA"). AR p. 20 and *see* AR pp. 172, 178 (Plaintiff's applications listing onset date), AR pp. 194-95, 197 (2018 earnings records) and AR p. 44 (Plaintiff's testimony confirming her work activities in 2018).
[26] R. Doc. 15, p. 3.

4

her attorney. However, Plaintiff has not shown that she was prejudiced by the ALJ's adoption of her reported onset date of January 1, 2018 as opposed to any of these alternate dates.[27]

Plaintiff has not explained what difference a change to her onset date would make to the outcome of her case.[28] Additionally, the ALJ found, and Plaintiff does not contest, that she engaged in SGA[29] in 2016 despite her accident; therefore, Plaintiff could not have established disability from the date of the accident in January 2016.[30] Finally, Plaintiff's attorney argued at the hearing:

> The first issue is her alleged onset date of January 18 of 2018. Had the case been processed correctly, the examiner would've taken into account Ms. Stamper's prior filings.[31] The record is clear that the Claimant was involved in a motor vehicle accident in January of 2016 and did -- and while she did just barely engage in SGA that

---

[27] *See Jones v. Astrue,* 691 F.3d 730, 733 (5th Cir. 2012) ("A court will reverse the ALJ's decision as not supported by substantial evidence if the claimant shows that (1) the ALJ failed to fulfill his duty to develop the record adequately and (2) that failure prejudiced the plaintiff," citing *Brock v. Chater,* 84 F.3d 726, 728 (5th Cir. 1996)).
[28] R. Doc. 15, p. 3.
[29] *See* Neroes v. Comm'r of Soc. Sec. Admin., No. 19-2277, 2020 WL 7390484, at *3 (N.D. Tex. Nov. 25, 2020), *report and recommendation adopted,* No. 19-2277, 2020 WL 7388628 (N.D. Tex. Dec. 16, 2020) ("A claimant who engages in SGA is not disabled regardless of her medical condition, age, education, or work experience. 20 C.F.R. § 416.920(b). Gainful work activity is 'work [done] for pay or profit.' *Id.* § 416.972(b). Generally, if a claimant worked for substantial earnings, the SSA will find that the claimant engaged in SGA. § 416.974(a)(1). The SSA sets forth guidelines by which substantial earnings are determined." In 2016, an employee's "countable earnings" above an average of $1,130 per month — for an annual income of at least $ 13,560 — were deemed substantial. *See* Program Operations Manual System, DI 10501.015(B), https://secure.ssa.gov/apps10/poms.nsf/lnx/0410501015 (last accessed on February 27, 2023). Plaintiff earned $14,314 in 2016 and therefore engaged in SGA. AR pp. 185, 191.
[30] AR p. 25 and *see* AR pp. 38, 44, 46-47, 62 (testimony) and AR pp. 185, 188, 193-95, 197 (earnings records). *See Neroes,* 2020 WL 7390484, at *2 ("As relevant here, at step one, an individual who is working and engaging in SGA is not disabled. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curiam) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b)-(f)).").
[31] While Plaintiff's attorney alleged at the hearing that Plaintiff's receipt of minor benefits was not reflected in the record, Plaintiff did not raise the ALJ's lack of consideration of her minor benefits as an error in this proceeding. At most, Plaintiff only mentions receipt of minor benefits in her Memorandum. R. Doc. 15, p. 2. The record contains no information regarding Plaintiff's minor benefits, which Plaintiff's attorney was unable to obtain. AR pp. 38, 59. However, Plaintiff has not argued how consideration of her receipt of minor benefits would have affected the denial, nor did her attorney request that the Commissioner obtain information about those benefits. *See Johnson,* 2010 WL 4722275, at *8 ("The court will not reverse the decision of an ALJ for failure to fully and fairly develop the record unless the claimant shows that he or she was prejudiced by the ALJ's failure." *Carey,* 230 F.3d at 142. 'To establish prejudice, a claimant must demonstrate that he or she 'could and would have adduced evidence that might have altered the result.'"). To the contrary, Plaintiff's counsel seemed to concede that the records were not accessible. AR p. 59. Furthermore, Plaintiff has made statements that cast doubt as to the validity of her entitlement to minor benefits. When Plaintiff was taken to the emergency room in September 2017 in response to an order of protective custody initiated by her mother, Plaintiff reported to the facility that "her mother had her lying about mental health issues in order to get a check." AR p. 367.

5

same year, **the file wasn't fully developed to determine what her last day of work was to establish an onset date**.[32]

Even if Plaintiff's last day of work had not been determined before the hearing, the ALJ questioned Plaintiff during the hearing to determine her last day of work. Plaintiff was not certain,[33] but she ultimately testified that, in March of 2018, she visited a doctor and was told that she had "certain physical limitations that limited me from doing anything since then,"[34] thereby indicating that, at the latest, her last day of work was in March 2018, just two months after her reported onset date of January 2018.[35] Assuming that Plaintiff is now arguing that her onset date should correspond to her last day of work in March 2018, Plaintiff has not shown how the ALJ's failure to change the onset date to March 2018 prejudiced her.[36]

### B. Substantial Evidence Supports the ALJ's Determination of Plaintiff's Severe Impairments at Step 2

The ALJ considered Plaintiff's other impairments, aside from reconstructive surgery of her hip, at step 2 and found that they were not severe.[37] Plaintiff argues that the ALJ erred in finding that her mental impairments, deep vein thrombosis ("DVT"), and obesity were not severe.[38]

#### 1. The Evidence Supports the Finding that Plaintiff's Mental Impairments Cause Only Mild Limitations

Substantial evidence supports the ALJ's finding that Plaintiff's depression and anxiety do not cause more than minimal limitation in her ability to perform basic mental work activities.[39] The medical records related to mental health treatment show that Plaintiff's mental condition has

---

[32] AR p. 39 (emphasis added).
[33] Plaintiff testified that she last cut hair for money "last year," which would have been 2018, but then claimed she was referring to 2017. AR p. 43. Her subsequent testimony put the date in 2018. AR pp. 44, 46.
[34] AR p. 46.
[35] Plaintiff worked in 2018, although, as noted by the ALJ, her earnings did not meet the level for SGA. AR pp. 20, 195, 197.
[36] *Jones,* 691 F.3d at 733.
[37] AR pp. 20-23.
[38] R. Doc. 15, pp. 3-4.
[39] AR p. 20.

generally been found normal, including during her September 2017 emergency room visit to OLOL on an order of protective custody initiated by her mother.[40] During that visit, Plaintiff was found cooperative, pleasant, and oriented to person, place, and time with no hallucinations, acute psychosis or suicidal thoughts, and with normal mood, affect, behavior and thought content. Plaintiff was released.[41] During Plaintiff's visits with John Fidanza, PSYD, MPAP from March to May 2018 for treatment for bipolar disorder, anxiety and depression,[42] Plaintiff was found to be open and cooperative, in no distress, oriented to person, place, and time, and with normal mental status and adequate fund of knowledge.[43] On her last visit, Plaintiff "reported gradual and

---

[40] While this visit pre-dates Plaintiff's disability onset date, the ALJ considered it, which he is permitted to do. *See, e.g., Hughes v. Kijakazi,* No. CV 20-2374, 2022 WL 1256704, at *11 (E.D. La. Mar. 9, 2022), *report and recommendation adopted,* No. CV 20-2374, 2022 WL 1238628 (E.D. La. Apr. 26, 2022) (holding that, "The regulations require that the Commissioner consider all evidence in the case record when making a disability determination. 20 C.F.R. § 404.1520(a)(3)," and further noting at *12: "A district court in Texas recently determined that 'the Fifth Circuit has not specifically addressed whether ALJs are required to consider medical opinions that predate the alleged onset of disability," but that other circuits 'have found that an ALJ may not simply ignore medical opinions because they pre-date the onset of disability or post-date the last insured date, since that evidence can be relevant to a claim of disability.' *Davidson v. Colvin*, 164 F. Supp. 3d 926, 941 (N.D. Tex. 2015)." (citations omitted).
[41] AR pp. 360-61, 365 and 371. Plaintiff denied her mother's allegations, and was discharged for not meeting the criteria for an involuntary legal hold and presenting a low risk of imminent danger. AR p. 371.
[42] As Plaintiff points out (R. Doc. 15, p. 4), these records of treatment contradict the ALJ's finding that "There is no objective medical evidence of record to show that the claimant received any treatment from a mental health professional or psychiatric specialist." AR p. 21. However, this statement is not prejudicial because, as noted, Plaintiff's mental status has largely been found normal, and because, despite the ALJ's statement, he considered the records of Plaintiff's visits with Fidanza. AR p. 21 referencing "6F" (records of visits with Fidanza).
[43] AR pp. 393-98, 403-04. *See* the treatment records *in globo* at AR pp. 393-411 (showing that Plaintiff was treated from March to May 2018 for her mental impairments with medication and that she improved over time. *See* AR p. 393 (May 23, 2018 visit noting Plaintiff reported gradual and significant improvement in affective/behavior functioning over four weeks and had normal speech and thought processes, had no suicidal tendencies, was cooperative and oriented as to person, place and time, was able to perform activities of daily living independently, and reported absence of mood liability, improved frustration tolerance, decreased dysphoria, and "was observed to be 100% on task"); AR p. 395 (April 23, 2018 visit noting that while Plaintiff reported insomnia, she also reported stable affective/behavioral function, and had normal speech and thought processes and was cooperative and oriented to person, place, and time); AR pp. 397-98 (March 21, 2018 visit noting Plaintiff was able to perform all activities of daily living ("ADLs") independently, and had normal memory, speech and thought processes, and was open, cooperative, and able to express ideation and affect in a goal-directed manner). *See also* visits with other providers with similar reports at AR p. 406 (March 5, 2018 with nurse Tammy Bihm noting Plaintiff was oriented to time, place and person, and had a normal mental status exam); AR p. 377 (March 15, 2018 visit with Parris Cardiovascular Center noting Plaintiff had normal speech, memory, thought content, attention span and concentration ability, and had appropriate mood and affect and logical thought processes); and AR p. 433 (July 30, 2019 visit with LSU Health Surgical Clinic noting Plaintiff was negative for depression).

significant improvement in affective/behavioral functioning over the past 4 weeks," and was "able to perform all ADLs independently."[44]

The ALJ also considered the four areas of mental functioning in the revised "paragraph B" criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. As to each of the paragraph B criteria, the ALJ's findings of only mild limitations are supported by the evidence of record, including the referenced medical records showing Plaintiff's generally normal mental status evaluations (*i.e.*, cooperative, oriented, and in no distress).[45] In the first functional area of understanding, remembering, or applying information, and despite Plaintiff's complaints of memory problems,[46] Plaintiff successfully worked post-accident as a barber. She reported that she could use the internet to shop, prepare simple meals and do laundry, manage her own finances, and did not require reminders to take medicine, which abilities support the ALJ's finding of only a mild limitation in this area.[47] As to the second criteria of interacting with others, Plaintiff reported irritability, problems interacting with others, paranoia, and social withdrawal.[48] However, when evaluated by providers, Plaintiff was not suicidal or psychotic.[49] Plaintiff argues that she worked in a home setting, had no set schedule, and had little interaction with her clients;[50] however, regardless of the frequency and location, it logically follows that some degree of interaction with her clients would be required in order to style their hair.[51] Therefore, substantial evidence supports the ALJ's

---

[44] AR p. 393.
[45] AR pp. 21-22. The record does not contain any opinions from Plaintiff's medical providers specifically regarding the four paragraph B functional areas.
[46] AR p. 255. The ALJ's findings of mild limitation in each of the four areas takes Plaintiff's level of impairment into consideration.
[47] AR pp. 44-47, 252-54. In connection with his analysis of the four paragraph B criteria, the ALJ stated that Plaintiff indicated in her function report that she "cuts grass sometimes." AR pp. 21-22. The reports do not reflect that Plaintiff stated that she cuts grass, but the ALJ's reference to it is not prejudicial in light of Plaintiff's past work and ability to engage in other activities, which support his finding of only mild limitations.
[48] AR pp. 60, 250, 255-56.
[49] AR pp. 377, 382, 393-96.
[50] R. Doc. 15, p. 4 and AR pp. 47-48, 61.
[51] Based on her earnings and testimony at the hearing about the amount charged per haircut, the ALJ estimated that Plaintiff did 700 haircuts in 2017, an average of 58 haircuts per month. AR pp. 48-49; AR pp. 195; 197 (2017 earnings records)

8

finding that Plaintiff's work as a barber cutting and styling hair indicates that she regularly and appropriately interacted with her clients.[52]

As to the third paragraph B criteria of concentrating, persisting, or maintaining pace, Plaintiff reported concentration problems and difficulty following spoken instructions.[53] However, Plaintiff reported that she can follow written instructions and handle changes in routine, and can carry out short, simple instructions.[54] *See also* the discussion above regarding the first paragraph B criteria. The ALJ's finding of a mild limitation in the fourth paragraph B criteria of adapting or managing oneself is supported by his findings, based on the evidence of record, relating to the records noting Plaintiff's normal mental status evaluations and the other three paragraph B criteria, *i.e.*, Plaintiff was able to work for multiple years post-accident and engaged in SGA in 2016, notwithstanding the accident in January of that year. She can also do laundry, surf the internet and handle her finances, can follow written instructions and handle changes to her routine. Further, Plaintiff has not been found suicidal or psychotic, and the medical records do not reflect any episodes of decompression since the disability onset date.[55] Thus, substantial evidence supports the ALJ's findings that each of the four criteria cause no more than a mild limitation and are non-severe.

> 2. The Evidence Supports the Finding that Plaintiff's Obesity Is Not a Severe Impairment

Plaintiff's most recent medical records reflect that she has a Body Mass Index ("BMI") of more than 30 and is therefore considered obese.[56] The ALJ found that there is no evidence

---

[52] AR pp. 21, 44-47.
[53] AR pp. 250, 255.
[54] AR pp. 59, 255-56.
[55] AR pp. 393-398, and *e.g.*, AR pp. 358-72. *See* the footnotes *above* relating to the other three paragraph B criteria.
[56] AR p. 20. *See* <u>Titles II & XVI: Evaluating Cases Involving Obesity</u>, SSR 19-2p (S.S.A. May 20, 2019) ("In the medical community, obesity is defined as a BMI of 30.0 or higher."). While the ALJ's decision references Plaintiff's "most recent medical records," it is unclear to what record the ALJ's citation to "(Ex. B12F. 29)" refers. AR p. 20. Furthermore, the ALJ's reference to Plaintiff's BMI of 34.1 (based on a weight of 231 and a height of 69 inches) is

9

indicating that Plaintiff's obesity, alone or in combination with her impairments, has caused her to be unable to work.[57] Plaintiff did not list obesity as a medical condition that limits her ability to work, did not testify that it limits her ability to work, and has not provided any medical evidence that shows that obesity limits her ability to work.[58] Accordingly, substantial evidence supports the ALJ's finding that Plaintiff's obesity is not a severe impairment.

> 3. The Evidence Supports the Finding that Plaintiff's DVT Is Not a Severe Impairment

The ALJ's decision reflects that, even if not specifically mentioned in his opinion, he considered Plaintiff's other conditions, including her DVT:

> [T]he overall evidence of record supports a finding that any other condition, not specifically mentioned in this decision, but that may be mentioned briefly in the record is not considered severe. In reviewing the record, special attention was given to the duration and frequency of medical conditions for which the claimant sought treatment. Therefore, the undersigned finds that those impairments that are not specifically mentioned reveal only a slight abnormality having such minimal effect on an individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience and are therefore, non-severe.[59]

The medical records reflect Plaintiff's reports of developing DVT after her January 2016 surgery, which was successfully treated with medication (Xarelto) when Plaintiff took it.[60] At the hearing,

---

erroneous. The latest record is Plaintiff's July 30, 2019 visit at LSU Surgical Health Clinic where Plaintiff's BMI was calculated as 38.41 (based on a weight of 210 pounds and a height of 62 inches). AR pp. 440, 447. However, these discrepancies are not prejudicial because, regardless of the exact extent, there is no evidence in the record that indicates that Plaintiff's obesity, whether alone or in conjunction with other impairments, significantly limited her ability to do basic work activities, nor did Plaintiff testify that it did.

[57] AR p. 20 and *see* SSR 19-2p ("If the person's obesity, alone or in combination with another impairment(s), significantly limits his or her physical or mental ability to do basic work activities, we find that the impairment(s) is severe. We find, however, that the impairment(s) is 'not severe' if it does not significantly limit [a person's] physical or mental ability to do basic work activities.").

[58] AR p. 212.

[59] AR pp. 22-23. *See also* the AR p. 212 and the State Agency disability determination explanation at AR pp. 80-81.

[60] AR p. 308 (March 29, 2016 visit with Dr. Green noting history of DVT); AR pp. 372-73 (February 2, 2018 OLOL visit noting DVT and that Plaintiff formerly took a blood thinner but was not taking one at that time); AR pp. 376, 378 (March 18, 2018 initial visit with Parris Cardiovascular Center for DVT, noting that Plaintiff was diagnosed with DVT in February 2016 and a pulmonary embolism in her lungs with symptoms over two years that improved while

10

Plaintiff testified that she was taking the medication at that time and it treated the condition.[61] As nurse Bihm pointed out to Plaintiff in March of 2018, DVT (and pulmonary embolisms) can be treated and resolved, and there is no indication from the records that Plaintiff was diagnosed with active DVT or a pulmonary embolism after her January 1, 2018 disability onset date.[62]  Therefore, substantial evidence supports the ALJ finding that Plaintiff's DVT is non-severe.

### C. Substantial Evidence Supports the ALJ's Finding that Plaintiff Does Not Meeting the Criteria of Listing 1.02

The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.02 Major dysfunction of a joint(s) (due to any cause),[63] the most applicable listing.[64]  The ALJ found that there was no evidence of involvement of one major peripheral weight-bearing joint

---

she was on Xarelto and a compression stocking, but that Plaintiff stopped Xarelto in January 2017 and her leg pain returned. Plaintiff was then restarted on Xarelto); AR p. 401 (March 14, 2018 visit with nurse Bihm at Southeast Community Health System, where Plaintiff reported having DVT and a pulmonary embolism in 2017.  Plaintiff wanted medication to prevent another pulmonary embolism, but Bihm noted: "Pt has no s/s of DVT and PE. We discussed that DBT and PE can resolve and never come back. She is convinced that they have returned.").
[61] AR p. 51.
[62] The record of Plaintiff's July 30, 2019 visit with LSU Health Surgical Clinic reflected that Plaintiff reported having a DVT "that was treated medically.  Up until last year the DVT is still present and she was placed on Xarelto, which she currently takes.").  AR p. 476.  This note only reflects Plaintiff's subjective reports of conditions, and the record does not indicated that Plaintiff was independently diagnosed with DVT or a pulmonary embolism by LSU at that visit.  Instead, she was assessed with "posttraumatic arthritis and osteonecrosis" for which it was determined that Plaintiff needed a total hip replacement.  *See* AR pp. 476-80.
[63] "1.02 Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With: A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b…, resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c."
[64] Plaintiff has not contested the ALJ's application of Listing 1.02.  During the hearing, Plaintiff's attorney asserted, without explanation, that Plaintiff met the criteria of Listing 1.03, Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate effectively as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur within 12 months of onset.  AR p. 39. The ALJ found that the criteria of Listing 1.03 were not met for the same reason they were not met for Listing 1.02, *i.e.* because there was no evidence Plaintiff could not ambulate effectively. AR p. 23.

11

resulting in the inability to ambulate effectively.[65] Plaintiff argues that the ALJ erred at step 3 when he failed to consider her use of a cane in his evaluation of the criteria of Listing 1.02.[66]

While Plaintiff was noted to have an antalgic gait with a limp,[67] the ALJ found that she was ambulating effectively without an assistive device. As noted by the ALJ, Plaintiff did not have a cane at the hearing. She testified that she used the cane sometimes, and she denied using an assistive device to ambulate during a post-hearing medical visit.[68] Even considering Plaintiff's alleged use of the quad cane she received in August 2019 as asserted in her Memorandum, that use would only limit the functioning of one of her arms/hands, not both, as is generally required by the Listings to show the inability to ambulate effectively.[69] Therefore, substantial evidence supports the ALJ's determination that the criteria of Listing 1.02 were not met.

### D. Substantial Evidence Supports the ALJ's Crafting of the RFC

The ALJ determined that Plaintiff has the RFC to perform light work as involving lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10

---

[65] AR p. 23 and *see* Listing 1.00B(2)(b): "(1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities…."
[66] R. Doc. 15, pp. 3-4.
[67] AR p. 428 (June 28, 2018 Ortho BR initial physical therapy evaluation noting "antalgic gait [with] limp") and AR p. 478 (July 30, 2019 visit with LSU Health Surgical Clinic noting limping antalgic gait). The records reflect that a quad cane was either ordered for or delivered to Plaintiff on August 1, 2019 (AR pp. 465-66), but there are no records after August 1, 2019 or other indications that Plaintiff used the cane. Plaintiff was referred to have a total hip replacement after she obtained the required clearances, but her Memorandum indicates that she had not had the procedure when the Memorandum was filed. AR pp. 469, 471, 478, R. Doc. 15, p. 4.
[68] AR pp. 23, 42-43 (testimony), AR p. 476 (record of July 30, 2019 visit with the LSU Health Surgical Clinic, where Plaintiff reported that she was not using an assistive device). *See also* Plaintiff's brief at R. Doc. 15, p. 3. Plaintiff also argues that the ALJ failed to consider the records submitted post-hearing reflecting her visit with LSU Health Surgery Clinic regarding a hip replacement. R. Doc. 15, p. 3. However, the ALJ considered this evidence in the determination of Plaintiff's RFC. AR p. 25.
[69] R. Doc. 15, p. 3 and AR pp. 465-66 and *see* Listing 1.00B(2)(b)(2): "Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or *two* canes…." (emphasis added).

pounds,[70] except she is limited to occasional climbing of ramps, stairs, ladders, ropes, and scaffolds, occasional crawling, and frequent balancing, stooping, kneeling, and crouching.[71] "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, *or* when it involves sitting most of the time with some pushing and pulling of arm or leg controls."[72] Plaintiff argues that she cannot perform any work due to her impairments and her pain in walking and standing, and thus disputes that she can perform light work with the assigned postural limitations.[73]

Substantial evidence supports the ALJ's determination that Plaintiff can perform light work, which includes Plaintiff's testimony and reports, medical records reflecting her mental status, and her post-accident work history from 2016 (during which she engaged in SGA)[74] to 2018.[75] (The medical evidence of record that reflects sporadic treatment for Plaintiff's hip since the disability onset date is discussed in the section *below*). Plaintiff can follow written instructions, carry out short simple instructions, accept instruction from a supervisor, handle changes in routine,

---

[70] *See* 20 C.F.R. § 404.1567(b) and 416.967(b) ("To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."). Titles II & XVI: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2, SSR 83-10 (S.S.A. 1983) ("Frequent" means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time. The lifting requirement for the majority of light jobs can be accomplished with occasional, rather than frequent, stooping. Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk. They require use of arms and hands to grasp and to hold and turn objects, and they generally do not require use of the fingers for fine activities to the extent required in much sedentary work.").
[71] AR pp. 23 *and see* SSR 83-10 ("Occasionally" means occurring from very little up to one-third of the time."). The ALJ adopted the state agency RFC assessment completed by Charles Gruenwald, MD because the ALJ found the assessment consistent with Plaintiff's sporadic treatment and reported ADLs, among other factors. AR p. 26.
[72] 20 C.F.R. § 404.1567(b) and § 416.967(b) (emphasis added).
[73] R. Doc. 15, p. 4 ("My physical Impairments will make me unable to perform In any job setting In the economy as for [sic] cannot prolong stand or walk for large periods of time….").
[74] AR pp. 185, 188 (earnings history).
[75] *Murray v. Astrue*, 419 F. App'x 539, 541 (5th Cir. 2011) an ALJ may properly consider an individual's ability to perform part-time work during the period she claims to be disabled) (citing *Vaughan v. Shalala,* 58 F.3d 129, 131 (5th Cir. 1995)(considering that the plaintiff worked for several years while suffering from the ailments she contended were disabling) and *see Porche v. Astrue*, 2013 WL 4046271, at *4, n.10 (M.D. La. 2013) ("Evidence of part-time work that does not satisfy the definition of substantial gainful activity is relevant in assessing the plaintiff's credibility, RFC and ability to work," (citing *Murray*)).

prepare her own meals, take care of her laundry, handle her finances, and does not require reminders to take care of her personal needs or medication.[76] Plaintiff can walk around stores such as Dollar General to buy groceries.[77] Plaintiff has consistently been found to have normal mental status evaluations.[78] Next and significantly, Plaintiff worked as a barber for a couple of years after the onset of her disability, where she cut men's hair and beards, handled small objects, used machines, tools or equipment, used technical knowledge or skills, and was a lead worker.[79] Barbering is classified as light work.[80] Thus, the ALJ properly found that Plaintiff's reports of her ability to engage in the foregoing activities, and her ability to work post-accident through 2018, contradict her allegations of chronic pain that prevents her from performing light work.[81] It is the province of the ALJ to weigh the evidence and evaluate credibility. As the Fifth Circuit has noted,

> Whether pain is disabling is an issue for the ALJ, who has the primary responsibility for resolving conflicts in the evidence. *See Carrier v. Sullivan,* 944 F.2d 243, 247 (5th Cir. 1991). It is within the ALJ's discretion to determine the disabling nature of a claimant's pain, and the ALJ's determination is entitled to considerable deference. *See Wren v. Sullivan,* 925 F.2d 123, 128 (5th Cir. 1991); *James v. Bowen,* 793 F.2d 702, 706 (5th Cir.1986). The determination whether an applicant is able to work despite some pain is within the province of the administrative agency and should be upheld if supported by substantial evidence. *See Jones v. Heckler,* 702 F.2d 616, 622 (5th Cir.1983). Moreover, pain must be constant, unremitting, and wholly unresponsive to therapeutic treatment to be disabling. *See Falco v. Shalala,* 27 F.3d 160, 163 (5th Cir. 1994). Subjective complaints of pain must also be corroborated by objective medical evidence. *See Houston v. Sullivan,* 895 F.2d 1012, 1016 (5th Cir. 1989).[82]

---

[76] AR pp. 252-53, 255-56 and testimony at AR pp. 59-60.
[77] R. Doc. 1-1, p. 1 (Plaintiff's pre-hearing brief to the ALJ) and AR p. 51.
[78] *See* the footnote above regarding Plaintiff's mental impairments, *e.g.*, AR p. 371 (record of Plaintiff's September 2017 OLOL ER visit noting that Plaintiff was cooperative and oriented to person, place, and time, had normal mood, affect, behavior, and thought content, had no acute psychosis, and had organized speech and behavior. Her mental status exam reflected normal findings).
[79] AR pp. 45-48, 245. Plaintiff later testified that she did not have to stand while barbering (AR pp. 47, 49). However, conflicts in the evidence are for the ALJ to decide, and if substantial evidence is found to support the decision, it must be affirmed even if there is evidence on the other side. *Masterson,* 309 F.3d at 272; *Selders,* 914 F.2d at 617.
[80] *See* the VE's testimony at AR p. 66.
[81] *See, e.g.,* Plaintiff's testimony at AR pp 43-47, 58, AR pp. 197-98 (earnings history), and Plaintiff's brief at R. Doc. 15, pp. 2, 4. *See also* the discussion *below* regarding Plaintiff's sporadic treatment.
[82] *Chambliss v. Massanari,* 269 F.3d 520, 522 (5th Cir. 2001).

The ALJ also noted, and Plaintiff does not contest, that once Plaintiff undergoes the recommended hip replacement surgery, there is no indication that it will not resolve the symptoms related to her hip impairment.[83] Finally, the ALJ accounted for Plaintiff's hip impairment and claims of pain by incorporating postural limitations in her RFC.[84] To the extent Plaintiff could be construed as arguing that her RFC should include elevation of her leg (as suggested by her attorney during the hearing),[85] Plaintiff testified that it is *not* necessary for her to elevate her leg when she sits, and she has cited no medical evidence requiring elevation.[86]  To the extent Plaintiff argues that the ALJ failed to account in the RFC for the use of the quad cane she received in August 2019, such failure did not result in error.  As mentioned above, there is no evidence indicating that the quad cane is medically necessary such that it was required to be considered in the RFC.[87] Additionally, Plaintiff's use of a quad cane is not, on its own, inconsistent with her RFC for light work, which can include "sitting most of the time with some pushing and pulling of arm or leg

---

[83] AR p. 25.  This includes Plaintiff's alleged need for use of a cane.
[84] AR pp. 23, 26.
[85] AR pp. 71-72.
[86] AR p. 57, and *see* AR pp. 71-73.
[87] *See Beard v. Kijakazi,* No. 4:20-CV-04409, 2022 WL 4021953, at *4 (S.D. Tex. Aug. 22, 2022), *report and recommendation adopted sub nom*. *Beard v. Saul*, No. 4:20-CV-04409, 2022 WL 4588586 (S.D. Tex. Sept. 28, 2022) ("Consistent with Mr. Beard's testimony, one of his medical records indicates that he was issued a cane. R.54, 374. But nothing in his medical records indicates that Mr. Beard needed to use a cane when ambulating. That evidentiary gap, alone, would justify excluding Mr. Beard's cane use from his RFC. *See Byrd v. Berryhill*, 2018 WL 706468, at *3 (S.D. Tex. Feb. 5, 2018) (affirming a denial of benefits where a claimant who used a cane to ambulate did not demonstrate that it was medically necessary)."). *See* AR pp. 431-35 (7/30/19 visit with Dr. Betech, at most noting at AR p. 431 that Plaintiff was not using an assistive device) and AR pp. 465-66 (8/1/19 order for quad cane with no diagnosis noted).  Prior to receiving the August 2019 quad cane, Plaintiff testified that she only used a cane "sometimes," which indicates intermittent use of a cane already in her possession. AR pp. 42-43.  In any case, there are no medical records indicating that the cane is medically required, despite that Plaintiff submitted additional records post-hearing.  It is Plaintiff's burden to establish disability. *See Lopez v. Kijakazi,* No. 21-930, 2022 WL 4355142, at *3 (W.D. Tex. Sept. 20, 2022) ("Plaintiff bears the burden to establish that her impairments result in significant limitations to her potential RFC. *Greenspan v. Shalala*, 38 F.3d 232, 239 (5th Cir. 1994). The Social Security Administration has stated that '[t]o find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device ... and describing the circumstances for which it is needed ....' *See* Policy Interpretation Ruling Titles II and XVI: Determining Capability to Do Other Work—Implications of a Residual Functional Capacity for Less than a Full Range of Sedentary Work, SSR 96–9p, 1996 WL 374185, at *7 (S.S.A. July 2, 1996). Plaintiff has failed to satisfy her burden to demonstrate a hand-held assistive device is medically required for her condition such that the ALJ was required to include a walker-limitation in her RFC.").

controls."[88] In this case, substantial evidence supports the ALJ's RFC for light work, with the additional assigned limitations.[89]

Plaintiff argues that her doctor imposed more restrictive limitations, and "the vocational expert stated in the hearing[90] that I will not be able to perform any jobly duties per my doctor's orders…."[91] This argument appears to relate to Plaintiff's attorney's statements during the hearing regarding a physical RFC assessment completed by Dr. John F. Loupe that Plaintiff contends was not taken into consideration.[92] Plaintiff's attorney noted that the RFC appeared to be in the record, but the pages were unreadable. Counsel stated she would re-submit the RFC for the ALJ's review (along with Plaintiff's prehearing brief, which the ALJ also did not receive), to which the ALJ agreed.[93] However, there is no indication that Dr. Loupe's RFC was re-submitted, although

---

[88] *See Britton v. Saul,* 827 Fed.Appx. 426, 429 (5th Cir. 2020) (affirming the ALJ's RFC for light work for a plaintiff with osteoarthritis and a recommendation for knee surgery who intermittently used a cane, which the consultative examiner found was not medically necessary) and 20 C.F.R. § 404.1567(b) and § 416.967(b). *See also Beard,* 2022 WL 4021953, at *4 ("[O]ther decisions—including from the Fifth Circuit—make clear that cane use does not categorically preclude a claimant from performing light work. *See, e.g., Britton v. Saul,* 827 Fed.Appx. 426, 429 (5th Cir. 2020); *Mosely v. Kijakazi*, 2022 WL 3093294, at *2 (N.D. Miss. Aug. 3, 2022) (finding that there was no categorical erosion of jobs in the light work category for a person who required use of a cane)."). Plaintiff testified that she sat while working as a barber post-accident and alternated between sitting and standing. AR pp. 49, 62

[89] The finding that Plaintiff can perform light work, as limited, also includes some amount of sedentary work. *See* 20 C.F.R. § 404.1567 ("If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."). Notably, the VE testified that Plaintiff would also be able to perform a large number of jobs at the sedentary exertional level. AR p. 27 and *see* testimony at AR 69-70.

[90] Plaintiff's attorney questioned the VE regarding Plaintiff's ability to perform her past relevant work and other work in the economy in light of Dr. Loupe's alleged RFC, but Plaintiff's attorney only verbally conveyed the limitations in Dr. Loupe's RFC to the VE (and ALJ). AR pp. 70-73. As Dr. Loupe's RFC is not legible, the VE's testimony incorporating Dr. Loupe's alleged limitations, as interpreted and conveyed by Plaintiff's attorney, and their effect on Plaintiff's ability to work is speculative and unsupported because Dr. Loupe's alleged limitations cannot be verified, and Plaintiff failed to submit Dr. Loupe's alleged RFC, although she was given the chance to do so. Furthermore, the ALJ did not adopt Dr. Loupe's alleged limitations, and an ALJ is not bound by a vocational expert's testimony that is based upon evidentiary assumptions ultimately rejected by the ALJ. *See Jenkins v. Astrue*, 250 Fed. App'x 645, 647 (5th Cir. 2007) ("When hypothetical testimony by a vocational expert is unsupported by the evidence, the ALJ may properly disregard that testimony.").

[91] R. Doc. 15, p. 4.

[92] *See* R. Doc. 15, pp. 4-5 ("My physical impairments will make me unable to perform In any job setting In the economy as for [sic] cannot prolong stand or walk for large periods of time, **doctors' order that were all submitted at hearing and is in medical file**," (emphasis added) and *see* the transcript of the hearing at AR pp. 39, 70-71, wherein Plaintiff's attorney argued that Dr. Loupe's RFC imposed additional restrictions on Plaintiff, allegedly including a restriction on prolonged standing and walking).

[93] AR pp. 36-37, 40 and *see* the illegible pages at AR pp. 386-87.

counsel did submit a post-hearing brief and additional medical records.[94] It is Plaintiff's burden to submit evidence in her support of her claims, and Plaintiff cannot now complain that Dr. Loupe's RFC was not considered when she failed to re-submit it to the ALJ, even though she was given the opportunity to do so.[95]

### E. Substantial Evidence Supports the ALJ's Determination that Plaintiff Could Perform Her Past Relevant Work[96]

At step 4, the ALJ found that Plaintiff can perform her past relevant work as a barber (classified as light and skilled) as generally performed because the performance of that work would not require work-related activities excluded by her light RFC.[97] The ALJ found that this position was past relevant work because it was performed within fifteen years of the date of his decision, for a sufficient length of time to learn and provide average performance, and at the level of substantial gainful activity.[98] Consistent with 20 C.F.R. § 404.1569a, the ALJ compared Plaintiff's RFC with the physical and mental demands of this job,[99] and determined that Plaintiff could

---

[94] AR pp. 290, 430, *et seq*.

[95] *See Lopez,* 2022 WL 4355142, at *3 ("Plaintiff bears the burden to establish that her impairments result in significant limitations to her potential RFC. *Greenspan v. Shalala*, 38 F.3d 232, 239 (5th Cir. 1994).").

[96] The ALJ's finding that Plaintiff could perform her past relevant work at step 4, and is therefore not disabled, was conclusive and terminated the analysis. *See Wren,* 925 F.2d at 125–26 ("A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis," (citing *Lovelace v. Bowen,* 813 F.2d 55, 58 (5th Cir. 1987)). However, despite the ALJ's finding that Plaintiff could perform her past relevant work at step 4, the ALJ proceeded to step 5 and made an alternate finding. Relying on the testimony of the VE and the Medical Vocational Guidelines as a framework, the ALJ determined that there were other jobs in the national economy that Plaintiff could perform, such as customer service clerk (light, semiskilled), retail cashier (light, semiskilled), and warehouse security guard (light, semiskilled). AR pp. 26-28. Plaintiff does not assign the ALJ's step 5 finding as error, nor does she address it in her Memorandum. As such, and because the ALJ's findings at step 4 were conclusive, his step 5 findings are not addressed in this Report.

[97] AR p. 26, 66-67 (Yent testified that barber is Dictionary of Occupational Titles code 330.371-010). *See* AR p. 26 citing 20 C.F.R. § 404.1565, 20 C.F.R. § 416.965 and SSR 00-4p (Policy Interpretation Ruling : Titles II & XVI: Use of Vocational Expert & Vocational Specialist Evidence, & Other Reliable Occupational Info. in Disability Decisions, SSR 00-4P (S.S.A. Dec. 4, 2000)).

[98] AR p. 26, citing SSR 82-62 (Titles II & XVI: A Disability Claimant's Capacity to Do Past Relevant Work, in Gen., SSR 82-62 (S.S.A. 1982)), and *see* AR pp. 197-98 (earnings records), AR pp. 240, 245, and AR pp. 44-49 (testimony).

[99] AR p. 26 and *see* 20 C.F.R. § 404.1569a(a) ("When we decide whether you can do your past relevant work (see §§ 404.1520(f) and 404.1594(f)(7)), we will compare our assessment of your residual functional capacity with the demands of your past relevant work.").

17

perform it as generally performed based on the testimony of the VE.[100] Plaintiff argues that she cannot perform her past relevant work as a barber.[101]

Substantial evidence supports the ALJ's determination that Plaintiff can perform her past relevant work because she engaged in her past relevant work after the hip fracture that caused her severe impairment. Specifically, Plaintiff confirmed that she worked as a barber after her January 19, 2016 accident to some point after the alleged disability onset date of January 1, 2018. While she argues in brief that "the severity of my physical disability worsened over time …and now I am unable to perform any of those duties," Plaintiff's treatment records show only sporadic treatment in 2018 and 2019 for her hip, including only attending a physical therapy evaluation and two sessions,[102] which supports the ALJ's decision to discount Plaintiff's statements as to the worsening and severity of her condition and supports the ALJ's findings that Plaintiff remains physically capable of performing her past relevant work.[103] Even assuming Plaintiff's use of a cane, that does not preclude an RFC for light work, as explained, above.[104] Further, Plaintiff has not shown that her mental impairments, which are only mild according to substantial evidence in the record, limit her ability to perform her past relevant work, as she can follow written instructions, carry out short simple instructions, accept instruction from a supervisor, and handle changes in routine.

---

[100] AR p. 26. The ALJ found that Yent's testimony was consistent with the information in the Dictionary of Occupational Titles and accepted it. *See* AR pp. 26, 66-67.
[101] R. Doc. 15, p. 4.
[102] AR pp. 422-29.
[103] R. Doc. 15, p. 4 and AR pp. 24-25, 43-47, 185, 188-89. Per the records, Plaintiff did not receive any specific treatment for her hip after March 2016 until March 15, 2018, when she visited Ortho BR and Parris Cardiovascular Center on the same day for hip pain and evaluation for DVT. AR pp. 376-87. Plaintiff then visited Total Rehab for two physical therapy visits in June and July 2018. AR pp. 422-29. Plaintiff's records show no further treatment until she visited LSU Health Surgical Center in 2019 for an evaluation and was then recommended for a hip replacement. AR pp. 431-35.
[104] *Beard,* 2022 WL 4021953, at *4.

## VI. RECOMMENDATION

The analysis above demonstrates that Plaintiff's claims of reversible errors are without merit. The record considered as a whole supports the finding that the ALJ applied the proper legal standards and substantial evidence supports the determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that under sentence four of 42 U.S.C. § 405(g), the final decision of the Acting Commissioner of Social Security be **AFFIRMED**, and this action be **DISMISSED WITH PREJUDICE.**

## ORDER

**IT IS ORDERED** that the Clerk of Court shall send this Magistrate Judge's Report, Recommendation and Order to Plaintiff Tiffany Latres' Stamper by regular and certified mail, return receipt requested at the address listed on PACER.

Signed in Baton Rouge, Louisiana, on March 2, 2023.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**